```
UNITED STATES DISTRICT COURT              FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
```

JOSEPH GRAJALES,

                Petitioner,                    MEMORANDUM
                                                              AND ORDER
                                                              08-CV-788 (JG)

    -against-

WILLIAM BROWN,

                Respondent.
```
---------------------------------------------------------------x
```
A P P E A R A N C E S :

    JOSEPH GRAJALES
        O4A3181
        Eastern New York Correctional Facility
        P.O. Box 338
        Napanoch, NY 12458
        Petitioner, *Pro Se*

    CHARLES J. HYNES
        District Attorney
        Kings County
        350 Jay Street
        Brooklyn, NY 11201
    By:   Keith Dolan
        Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Joseph Grajales petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking to overturn his conviction in New York State Supreme Court, Kings County, for robbery in the first degree. Grajales, appearing *pro se*, argues that he was denied due process of law when the government failed to provide his defense attorney with notice that a photographic identification procedure had been conducted, and that his Fourth Amendment rights were violated because he was stopped without reasonable suspicion. The government argues that

Grajales's claim regarding the photographic identification fails to raise a federal issue and that he received a full and fair opportunity to litigate his Fourth Amendment claim in state court, precluding its consideration here. For the reasons stated below, the petition is denied.

BACKGROUND

This case arises out of the February 4, 2003 robbery of Alex Negrón. The government's evidence at trial established that at approximately 1:00 PM on that date, Grajales and codefendant James Whiting approached Negrón in a restaurant in Brooklyn's Brownsville neighborhood. Grajales displayed what appeared to be a pistol and took Negrón's chain, while Whiting took money from Negrón's pocket. Later that day, the police showed Negrón an array of photographs, and he identified Grajales as one of the robbers.

On February 11, 2003, Negrón saw Whiting and Grajales on the street and called 911. Sergeant Gregory Green responded and picked up Negrón, who pointed out the robbers from the sergeant's car. Green, who was operating alone and had Negrón in his car, called for backup. Police Officer Joseph Parisi and Sergeant Michael Healey, who were operating in separate vehicles, each responded to the radio call and arrested Whiting and Grajales based on the call after conducting a show-up identification with Negrón. The officers recovered a loaded pistol from Grajales.

Along with Whiting, Grajales was indicted in New York Supreme Court, Kings County. Grajales's counsel moved to suppress Negrón's identification due to the government's failure to serve notice of the photographic identification as required by N.Y. Crim. Proc. Law § 710.30. The hearing court denied this motion, finding that the New York notice law was satisfied by notice of the February 11, 2003 street identification.

2

Grajales also moved to suppress the fruits of his stop, arguing that Parisi and Healey only received a radio description for Whiting, not for Grajales. Green testified that he transmitted the description of both defendants, while Parisi and Healey claimed to have received a radio transmission identifying only Whiting and to have stopped Grajales due to his proximity to Whiting. Hr'g Tr. 83, 134. Parisi also stated that the transmission was based on a 911 call, while Healey indicated that Green was responsible for the transmission. The Sprint report[1] appeared to indicate that one description was broadcast. Hr'g Tr. 83-84.

The audio recordings of Negrón's 911 calls were unavailable. While the reasons for their unavailability are not definitively established in the state court record, neither party objected to the hearing court's explanation that the audio recording was destroyed in accordance with the police department's standard policy of destroying such recordings if they have not been the subject of a subpoena within 90 days. *Id.* at 182. Grajales objected regarding the destruction of the tapes, arguing that Negrón's statements to 911 operators were required to be preserved under *People v. Rosario*, 9 N.Y.2d 286, 290 (1961), and that the destruction of the recordings deprived him of an adequate opportunity to assess the investigation procedures.

The hearing court denied Grajales's motion to suppress the stop, finding that while Green only transmitted one description, he also transmitted the fact that the complainant had recognized two individuals that robbed him. The hearing court found this transmission sufficient to give Healey and Parisi a basis to stop Grajales when they found him with Whiting.

Grajales was tried separately from Whiting and convicted of robbery in the first degree on March 4, 2004. Grajales appealed, arguing (1) that he was deprived of liberty without due process of law when Negrón's identification was not precluded despite the government's

---

[1] Sprint reports are inexact textual summaries of the contents of police radio communications.

failure to give notice of the photographic identification and (2) that he was unreasonably seized in violation of the Fourth Amendment and the New York Constitution when Parisi and Healey stopped him without reasonable suspicion.  The Appellate Division affirmed his conviction, finding that the government had not violated § 710.30's notice requirements and affirming the hearing court's finding that Parisi and Healey had reasonable suspicion supporting his stop.  *People v. Grajales* (*Grajales I*), 816 N.Y.S.2d 101, 101 (2006).

Grajales sought leave to appeal to the New York Court of Appeals, abandoning his claim regarding the stop and raising only the claimed violation of § 710.30 as a ground for relief.  The Court of Appeals granted leave, *People v. Grajales* (*Grajales II*), 7 N.Y.3d 756 (2006) (Ciparick, J.), and affirmed the Appellate Division's conclusion that the government had complied with § 710.30, *People v. Grajales* (*Grajales III*), 8 N.Y.3d 861, 862 (2007).

On December 27, 2007, Grajales moved to vacate his judgment of conviction under N.Y. Crim. Proc. Law § 440.10.   He raised the same claims he had presented to the Appellate Division.  On March 4, 2008, the Supreme Court, Kings County denied Grajales's motion on the ground that the issues it raised had been determined on the merits by the Appellate Division and the Court of Appeals.  *People v. Grajales* (*Grajales IV*), No. 1260/2003, slip. op. at 2 (N.Y. Sup. Ct. Mar. 4, 2008).

Grajales filed this petition on February 19, 2008.  I denied his requests to stay these proceedings pending the outcome of his § 440.10 motion and his appeal of the denial of that motion.

DISCUSSION

A. *The Legal Standards*

    1. *Exhaustion and Procedural Default*

28 U.S.C. § 2254(b) prevents a federal court from granting a petition for a writ of habeas corpus unless the petitioner has first exhausted all available state judicial remedies. In order to have exhausted state remedies, a petitioner must have "fairly presented" his federal constitutional claims to the highest state court by apprising it of "both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*). An unexhausted claim that can no longer be exhausted is deemed procedurally defaulted. *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2000) ("[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present these claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts must also deem the claims procedurally defaulted." (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991))).

A claim that has been procedurally defaulted in state court generally cannot be reviewed on the merits by a federal habeas court. *See Harris v. Reed*, 489 U.S. 255, 260-62 (1989) (explaining rationale for habeas corpus procedural default rule); *see also Coleman*, 501 U.S. at 750 (noting a state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having an opportunity to correct its own errors"). However, there are two circumstances in which a federal claim that has been procedurally defaulted -- or deemed procedurally defaulted due to the exhaustion requirement -- will still be reviewable on a federal petition for habeas corpus.

5

First, a petitioner is entitled to review of a procedurally defaulted claim if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. A petitioner may establish cause by showing "'that the factual basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable.'" *Id.* at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the alleged error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

Second, if a petitioner cannot show cause and prejudice, his procedural default may still be excused if he can demonstrate that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits -- that is, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This ground for excusing procedural default should be applied only in "extraordinary" cases, as courts deem substantial claims of actual innocence "extremely rare." *Schlup*, 513 U.S. at 321-22.[2]

2.  *Review of State Court Adjudications on the Merits Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") circumscribes the scope of federal habeas review of state convictions regarding claims the state court adjudicated on the merits. 28 U.S.C. § 2254(d). A federal habeas court may overturn a

---

[2] A procedural bar actually relied on by a state court to dispose of a claim may be found inadequate to prevent federal review on rare occasions where the state court applies the procedural bar in an "exorbitant" manner. *Lee v. Kemna*, 534 U.S. 362, 376 (2002). This doctrine has no apparent application in a case in which an unexhausted claim is deemed procedurally defaulted, as that is a case in which by definition no state court has applied a procedural bar in any manner, exorbitant or otherwise.

state court's ruling on the merits of a claim only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[3]

The Supreme Court has interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" to mean "the holdings, as opposed to the dicta," of its decisions at the time of the state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 412-13.

A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413. An unreasonable application is more incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (internal quotation marks omitted) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

---

[3] This limited scope of review is often referred to as "AEDPA deference." *E.g.*, *Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.   *Grajales's Claims*

   1.   *Violation of N.Y. Crim. Proc. Law § 710.30's Notice Requirement*

Although Grajales styles his claim regarding the identification procedures as a deprivation of his liberty without due process of law in violation of the Fourteenth Amendment, his claim presents issues of state law only. It is well settled that violations of § 710.30 do not amount to a violation of the constitutional right to due process. *See, e.g.*, *Southerland v. Gourd*, 269 F. Supp. 2d 48, 53 (E.D.N.Y. 2003) ("'Violation of the notice requirement of New York Criminal Procedure Law § 710.30 is purely a matter of state law and raises no constitutional issues for a habeas court to review.'" (quoting *Arocho v. Walker*, No. 01-CV-1367 (NRB), 2001 WL 856608, at *3 (S.D.N.Y. July 27, 2001))); *Ricketts v. Mazzuca*, 250 F. Supp. 2d 131, 135 (E.D.N.Y. 2003) (same, citing cases).[4]

Grajales argues that his deprivation of the automatic preclusion remedy guaranteed by § 710.30 constitutes a denial of due process. If this were the rule, however, every

---

[4] Grajales quotes *Lewis v. Bennett*, 328 F. Supp. 2d 396 (W.D.N.Y. 2004) as follows: "Federal habeas relief does not lie for alleged errors of state procedural or substantive law, unless such errors violate the constitution, laws or treaties of U.S. [sic] . . . statutory notice under CPL 710.30 'is only necessary' *if the Police or District Attorney arrange the confrontation or photographic array for the purpose of establishing identity*." Pet. 13 (quoting *Lewis*, 328 F. Supp. 2d at 412-13). To the extent Grajales intends this emphasis to imply that *Lewis* holds that violations of § 710.30 implicate federal law when the government arranges the identification procedure for the purpose of establishing identity, he misreads *Lewis*. The language Grajales (inaccurately) quotes in *Lewis* merely describes the terms of § 710.30, and does not suggest any situations in which a violation of § 710.30 amounts to a violation of federal law. *See Lewis*, 328 F. Supp. 2d at 412-13.

violation of § 710.30 would constitute a denial of due process, which is contrary to the unanimous view of federal courts that § 710.30 implicates purely state law issues.

Grajales also appears to argue that the alleged violation of § 710.30 deprived him of due process by depriving him of the opportunity to raise a meritorious federal constitutional challenge to his identification procedure. I note first that the Court of Appeals held that § 710.30 did not require notice of the photographic identification, *Grajales III*, 8 N.Y.3d at 862, and that I see no basis on which I could contravene New York's highest court's interpretation of New York law. Even if I could somehow find that there was a violation of § 710.30, moreover, Grajales's lawyer seems to have had notice of the photographic identification well in advance of the suppression hearing, and appears from the transcript of the hearing to have been well prepared.[5]

More fundamentally, however, Grajales did not have a meritorious federal constitutional challenge to his identification. On the date of the robbery, Negrón saw books of numerous photographs, which may have included Grajales. While the hearing court acknowledged that Grajales's photograph appearing 50 or 60 times in these photographs might be suggestive, it found no reason to believe that Grajales's photograph appeared that many times. After receiving an anonymous tip, the police showed Negrón, who was still at the station house, a photo array containing Grajales's picture, and Negrón correctly identified Grajales. The hearing court reviewed this array and found it not to have been unnecessarily suggestive. Hr'g Tr. 202. In any event, even if the hearing court had been not merely wrong but unreasonable in making both of these findings, *see* § 2254(d) (authorizing relief based unreasonable state court

---

[5] The record does not make clear how far before the hearing Grajales learned of the photographic identification, but Grajales moved for production of the photographs on October 20, 2003. Given that the identification hearing began on December 15, 2003, it is hard to see how Grajales was prejudiced. In any event, the transcript makes clear that Grajales learned of the existence of the photographs sufficiently in advance of the hearing to submit motion papers regarding the photographic identification. Hr'g Tr. 191.

determinations of fact), Grajales would still not have a meritorious federal constitutional claim cognizable through a writ of habeas corpus, as Negrón had an independent opportunity to observe Grajales both at the time of the robbery, *see United States v. Wong*, 40 F.3d 1347, 1360 (2d Cir. 1994) (finding an identification made 10 months after the crime independently reliable where a witness had the opportunity to look at the gunman for two or three seconds before ducking under a table), and "[o]nce in a while" in the neighborhood before the robbery, Hr'g Tr. 39. Thus, Negrón would still have been allowed, as a matter of federal law, to identify Grajales in court even if the photographic identification procedures had been unnecessarily suggestive. *See Wong*, 40 F.3d at 1359 ("If pretrial identification procedures have been unduly suggestive, a court may nonetheless admit in-court identification testimony if the court determines it to be independently reliable." (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977))).

Accordingly, this claim presents no ground on which I could find that the New York Court of Appeals' determination was "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts" as required by § 2254(d).

2. *Unreasonable Search and Seizure*

Grajales's Fourth Amendment claim is procedurally barred. In *Stone v. Powell*, the Supreme Court held that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 482 (1976). The Second Circuit interprets this holding to allow for federal habeas review of Fourth Amendment claims only "(a)

if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 71 (2d Cir. 1992).

As New York provides a procedure to redress alleged Fourth Amendment violations, *id.* at 70 n.1, Grajales must show an "unconscionable breakdown" in the procedure in order to allow me to consider the merits of his claim, *id.* at 70. While Grajales participated in a full suppression hearing and cross-examined the government's witnesses, he claims that there was nonetheless an unconscionable breakdown in the system due to the government's failure to provide information necessary to his attorney's preparation for the hearing. I take him to be complaining about the claimed violation of § 710.30 and about the destruction of the 911 tapes. Considering that Grajales had notice of the photographic identification prior to the hearing, had access to the Sprint report, and was afforded a full hearing at which he was able to cross-examine the police officers, these claimed errors do not amount to an unconscionable breakdown. *Cf. Dinsio v. Donnelly*, No. 03-CV-779 (LEK) (VEB), 2007 WL 4029221, at *12 (N.D.N.Y. Nov. 15, 2007) (report and recommendation) (noting that courts do not deem ineffective assistance of counsel to constitute an unconscionable breakdown, citing cases), *adopted by Dinsio v. Superintendent*, No. 03-CV-779 (LEK) (VEB), 2007 WL 4226390 (N.D.N.Y. Nov. 26, 2007); *cf. also Allah v. LeFevre*, 623 F. Supp. 987, 991 (S.D.N.Y. 1985) (noting that the Second Circuit in suggesting the possibility of an unconscionable breakdown cited to "a Supreme Court refusal to grant a writ of habeas corpus to a petitioner convicted of murder in a state trial claimed to have been dominated by an angry mob -- a decision which the later lynching of the petitioner and

history has overruled -- and to a law review article in which the author suggests situations such as the bribing of a trial judge, the prosecution's knowing use of perjured testimony, and a guilty plea extracted by torture that would justify federal habeas corpus inquiry" (internal citations omitted)).[6]

Even were I to reach the merits of his Fourth Amendment claim, I would be powerless to overturn the state court's denial of Grajales's motion to suppress. The state court found that Green made a radio transmission indicating that Negrón had recognized two individuals who robbed him, and giving their location and the description of Whiting as one of them. Hr'g Tr. 204. Parisi and Healey responded to this call and observed Whiting with Grajales. On these facts, Parisi had reasonable suspicion that Grajales was the other robber. *See, e.g.*, *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (noting that courts "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing" (internal quotation marks omitted)); *United States v. Lawes*, 292 F.3d 123, 127 (2d Cir. 2002) ("Reasonable suspicion is not a high threshold.").

Although Grajales points out some inconsistencies in the officers' hearing testimony, I cannot say that the hearing court's resolution of these inconsistencies was "an unreasonable determination of the facts." § 2254(d)(2). Healey testified that the radio transmission identified only a single robber, who he stopped, and he assumed that Grajales was

---

[6] Although the government did not raise this argument, I note that Grajales failed to present his Fourth Amendment claim to the New York Court of Appeals. Accordingly, it is unexhausted and can no longer be exhausted, and is deemed procedurally defaulted. *See Jones v. Keane*, 329 F.3d 290, 295-96 (2d Cir. 2003) (finding that a petitioner procedurally defaulted a claim by failing to include it in his application for leave to appeal to the New York Court of Appeals, in light of the court's rules preventing multiple requests for leave to appeal). As Grajales has failed to show cause and prejudice or a miscarriage of justice, this failure to exhaust would have provided another bar to review if the government had raised it.

stopped because he was with Whiting. Hr'g Tr. 133-34, 142-43. Green testified that he broadcast a transmission indicating that Negrón had identified two robbers, and provided the location and a description of at least one of the robbers. Hr'g Tr. 169. Parisi's testimony was ambiguous, indicating at two points that the radio transmission stated that Negrón had identified two individuals, *id.* at 83, 91, and at one point that it only provided a single description and no other information, *id.* at 85. Parisi also indicated that he spoke with Green, who indicated that Negrón had identified both defendants as the robbers, before placing Grajales under arrest, *id.* at 85-86, but apparently after stopping Grajales, *id.* at 91. Though the statements are not all precisely congruent, it was certainly not unreasonable for the hearing court, with the benefit of observing the demeanor of all three officers while testifying, to credit Green's testimony and those portions of Parisi's testimony indicating that Green communicated that Negrón had recognized two robbers. Accordingly, even if I reviewed Grajales's Fourth Amendment claim on the merits, I would not find any basis for relief given AEDPA's limits on the scope of my review.

## CONCLUSION

For the reasons stated above, the petition is denied. As Grajales has failed to make a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: June 2, 2008
      Brooklyn, New York